## WILSON v. KELLY.

1. When compensation is allowed out of a common fund, for expenses incurred and services rendered in behalf of the common interest, it is upon the principle of representation or agency.

2. Where one distributee brought action against her co-distributees for settlement, partition, and distribution, and, through her attorney, defeated a claim asserted by one of the heirs, and reduced a claim presented by a judgment creditor of the estate, such attorney is not entitled to a fee out of the common fund, although his services were beneficial to all the heirs alike.

Before FRASER, J., Kershaw, September, 1888.

The case is fully stated in the report of J. D. Dunlap, Esq., master. This report was as follows:

It having been referred the master to inquire and report to this court what attorneys herein are entitled to fees, to be paid out of the funds in the hands of the court, for services rendered the estate of Wylie Kelly, deceased, in these proceedings, and also what would be a proper fee for each attorney, the master would respectfully report:

I find as matters of fact: In the year 1875, a petition was filed in the Court of Probate for Kershaw County, praying for the sale of the lands of the estate of Wylie Kelly and for a partition of

the proceeds among the parties entitled. The petitioners were represented by Mr. J. B. Kershaw, attorney at law. The lands were sold on the terms set forth in the complaint herein. Subsequently, it having been decided by the Supreme Court that a Court of Probate had no jurisdiction in an action for partition, Emily C. Wilson, one of the heirs of Wylie Kelly, brought action against the administrator and other heirs for accounting and partition. Issues arose between the heirs at law, who employed attorneys to protect their interests. Emily C. Wilson was represented by Messrs. Chesnut & Workman; Mrs. Elizabeth Witherspoon by Mr. W. D. Trantham; Mr. Dorsey Kelly, by Messrs. Shannon & Kennedy; Mr. Barnwell R. Ingram, by Mr. J. T. Hay; the Cunningham heirs, by Mr. J. D. Wylie; and the administrator, John R. Shaw, by Mr. J. T. Hay.

The first issue was as to whether Dorsey Kelly was entitled to a share of the estate of his father, without accounting for the advancements made to him. He contended that he had bought property from his father, had given his note for same, and had subsequently obtained a discharge in bankruptcy, which relieved him from the payment of the said note. This was hotly contested before the master, the Circuit and the Supreme Courts.[1] It was decided that Dorsey Kelly, before receiving any share of the estate, would have to account for the amount due on the note given to his father. Messrs. Chesnut & Workman, Hay & Trantham, contended for the heirs at law opposed to the claim of Dorsey Kelly, who was represented by Messrs. Shannon & Kennedy. The result of this contest was beneficial to the interests of the heirs at law.

The next issue was made by the Cunningham heirs, represented by Mr. J. D. Wylie, and opposed by the other heirs, represented by the attorneys above named. This issue was before the master and the Circuit Court, and the claim was disallowed by the Circuit Court; the result of this contest was beneficial to the interests of the heirs at law.

The third issue was in regard to the judgment of D. A. Williams, administrator *de bonis non* of the estate of Wm. McKenna, *v.* John R. Shaw, administrator of the estate of Wylie Kelly. It

[1] See 16 S. C., 216.

was contended by Messrs. Chesnut & Workman, Hay, Trantham & Shannon, that the said judgment had been erroneously entered for a much larger amount than was due, and that the same should be corrected, so as to reduce it to the amount actually due. This was fought before the master, the Circuit, and Supreme Courts,[1] and resulted in the judgment being reduced in the sum of eight hundred and five dollars, a saving to the estate to that extent. In this contest the administrator, John R. Shaw, was represented by Mr. J. T. Hay.

Many references in regard to the foregoing issues were held before the master, at which the above named attorneys were present to protect the interest of their clients. The administrator, John R. Shaw, accounted before the master for his actings and doings in relation to the estate of Wylie Kelly at the references held for this purpose. Messrs. Chesnut & Workman, Hay & Trantham, attended and protected the interests of the estate. These attorneys rendered other services in relation to the accounting of the administrator, which inured to the benefit of the estate. Messrs. Chesnut & Workman rendered other services, which were beneficial to the estate as well as to the interest of their client.

The work and services done and rendered by Messrs. Chesnut & Workman, in contending for and sustaining the points made by them, were reasonably worth the sum of one thousand dollars, but payment of same cannot be made from the general fund belonging to the estate of Wylie Kelly. The said attorneys were employed by Mrs. Emily C. Wilson alone, and had no contract as to their services with any one authorized to bind the estate. That the services of Mr. W. D. Trantham were reasonably worth five hundred dollars, but the same should not be paid from the general fund, but by Mrs. Witherspoon, who employed him. That the services of Mr. J. T. Hay, rendered in the contests arising between the heirs at law of Wylie Kelly, were reasonably worth three hundred dollars, but he will have to look to Barnwell R. Ingram, who alone employed him, for the payment of same. That the services of Mr. J. T. Hay, rendered in the matter of the judgment of Williams, administrator of McKenna, and for representing the administrator in his accounting before the master,

---

[1] See 19 S. C., 160.

were reasonably worth two hundred dollars, and that the same should be allowed as a charge against the estate, he having been employed by the administrator, the legal representative of the estate. That the sum of fifty dollars has been paid Mr. Hay by the administrator, leaving a balance of one hundred and fifty dollars, which should be paid him out of the funds in the hands of the court.

I find as conclusions of law :

1st. That although the services rendered by the attorneys herein referred to have inured to the benefit of others with whom there was no contract relation, either directly or through some agent or representative, the same affords no legal foundation for a charge against such other persons. In *Westmoreland* v. *Martin* (24 S. C., 240), it is decided that an attorney's right to fees must in every case rest on contract made with the party himself who is charged, or with his representative. No legal claim for compensation can be founded upon services incidentally benefiting a party other than the employer, as against that party, because of the incidental benefits. In *Hand* v. *Savannah and Charleston Railroad Company* (21 S. C., 182), it is laid down that no one can legally claim compensation for voluntary services, however beneficial they may be, nor for incidental benefits flowing to a party as a result of services rendered under the employment of another party. In *Hubbard* v. *Camperdown Mills* (26 S. C., 581), it is held that a claim for professional services, resting, as it does, upon contract, cannot be made a charge against persons other than the client, by the simple fact that the services have inured to their benefit. The master is of the opinion that Messrs. Chesnut & Workman, Trantham & Hay (except as to the services rendered by Mr. Hay to John R. Shaw, administrator), are not entitled to any fees to be paid out of funds in the hands of the court.

2d. That Mr. J. T. Hay having rendered services for the benefit of the estate, and having been employed by John R. Shaw, the legal representative of the estate of Wylie Kelly, is entitled to compensation, to be paid out of the funds in the hands of the court. The administrator was a necessary party to the action, in so far as set forth in the findings of fact, and, as such, had a right to employ counsel. That the sum of one hundred and fifty

dollars should be paid to Mr. J. T. Hay out of the funds in the hands of the court for said services.

The Circuit decree was as follows:

This case came before me at the regular term of the court held in September, 1888, on a report of the master in reference to certain claims for counsel fees in the cause, and on exceptions thereto. I have very little to add to the views presented by the master in his lucid report on the questions raised.

The claim of Mr. Hay, so far as he represented the estate, has been allowed, and properly. Mr. Hay and other counsel who present claims for counsel fees were employed by certain heirs and distributees of the intestate, and rendered very valuable services. Their claim is against the general estate and not against the clients individually. The claim has been pressed on the ground that they are persons representing a class—that is, heirs or distributees—entitled to the fund in the hands of the court.

The doctrine which allows fees to a counsel for a representation of a class, does not apply to a case like this. It appears, in cases "where the representative of a class is the *principal and first actor*, either as plaintiff or defendant, the class being so numerous as not to be conveniently made parties individually." *Hand* v. *Railroad Company*, 21 S. C., 179, 180. The clients of these gentlemen were not only parties *by name*, but were *necessarily so*. In the case of *Brooks* v. *Brooks* (16 S. C., 621), not reported in full, my recollection is, that counsel fees for the infant defendants (legatees) out of the general fund were refused on Circuit, and the order was affirmed in the Supreme Court. It sometimes works great hardships that some parties enjoy the benefit of arduous labors of faithful counsel employed by others, and themselves refuse to bear their equal portions of the burdens of the litigation, but I do not know any remedy that the court can apply.

It is ordered and adjudged, that the exceptions be overruled, and the report of the master confirmed and made the judgment of this court, and that leave be given to apply for proper administrative orders to carry out the same.

*Messrs. Lyles & Haynsworth*, for appellant.

*Messrs. Earle & Purdy*, contra.

March 29, 1889.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This appeal involves the question of the allowance, out of funds in the Circuit Court, of a fee for the professional services of the attorney for the plaintiff.   The appellant's statement of facts, which are not questioned, is as follows: "Wylie Kelly, late of the County of Kershaw, departed this life intestate, leaving a considerable estate of real and personal property.   Letters of administration were granted to one John R. Shaw about January 22, 1875, and proceedings were thereafter commenced in the Probate Court for the partition of the real estate of the decedent, and progressed to a sale of the lands; but before compliance by the purchasers, it was decided by this court that the Court of Probate was without jurisdiction in such matter, and the proceedings came to an end.   Thereupon this action was commenced by the plaintiff, Emily C. Wilson, one of the distributees: (1) to confirm the sales made by the Probate Court, as they were considered advantageous; (2) to adjust the rights of all parties to the cause on account of advancements received and debts due by the distributees; and (3) for an accounting by the administrator.   The plaintiff, not having purchased any of the lands at the probate sale, had no interest in any of the questions which arose, other than such as was in common between her and the others, who were ultimately decided to be entitled to the estate.   During the progress of the litigation, a receiver was appointed, and several important questions arose and provoked active litigation, Mr. Workman, the plaintiff's attorney, taking the leading part in the litigation."

The points made and argued are all clearly stated in the report of the master, J. D. Dunlap, Esq., which should appear in the report of the case.   The master found that $1,000 would be reasonable compensation for the services of Mr. Workman; but that, although the services rendered inured to the benefit of all the heirs, there was no contract relation between them and the attorney of the plaintiff, either directly or through some agent or representative, and therefore the same affords no legal foundation for a charge against such other persons.   Upon exceptions to the

report, Judge Fraser confirmed it, and made it the judgment of the court.

From this order the plaintiff appeals upon the following exceptions: "1. Because his honor held that 'the doctrine which allows fees to a counsel for a representation of a class does not apply to a case like this.' 2. Because his honor did not find as a matter of fact, that the services of plaintiff's counsel, mentioned in the master's report, were rendered in creating and preserving a fund in the hands of the court for common distribution among the parties now entitled thereto, with the acquiescence and approval of the court administering said fund, and the plaintiff stood before the court as a representative of such class. 3. Because his honor disallowed the plaintiff's claim for counsel fees," &c.

Section 140 of the Code provides, that "when the question is one of a common or general interest of many persons, or when the parties are numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole." The question as to the principle on which counsel fees may be charged, has lately been several times before this court; and, as we think, it has been settled, that "when compensation is allowed out of a common fund belonging to others, for expenses incurred and services rendered in behalf of the common interest, it is upon the principle of representation or agency— *e. g.*, to a plaintiff in a creditor's bill, or to a defendant made a party as a representative of a class too numerous to be served." See *Hand* v. *Railroad Company*, 21 S. C., 165; *Westmoreland* v. *Martin*, 24 *Id.*, 240; *Hubbard* v. *The Camperdown Mills*, 25 *Id.*, 496.

According to these authorities, the only matter for decision here is whether the question made by the plaintiff was "one of a common or general interest of parties too numerous to be served," in the sense of the rule. The parties were not numerous, and were all brought by summons before the court. It was held in the case of *Bannister* v. *Bull* (16 S. C., 229), that the words, "one or more to sue for the benefit of others," in the Code, does not apply to co-tenants, "but were manifestly intended for creditors of an insolvent estate, and cases of that character, where the interest is in common. They (co-tenants) may be said, in one

sense, to have a common interest. * * * They have interests in the same property while it remains undivided, but such interests are distinct. Each has a right to the extent of his share." We have no doubt whatever—indeed, it comes within our personal knowledge—that Mr. Workman, in maintaining the rights of his client, the plaintiff, who was one of the distributees, rendered valuable services, which inured to the benefit of her co-distributees; but we are unable to see upon what principle, legal or equitable, we would be justified in ordering his fees to be charged upon the general estate. We agree with the master and Circuit Judge, that "the doctrine which allows fees to a counsel for a representation of a class does not apply to a case like this."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.